UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRUM WARIS,<br><br>                      Plaintiff,<br><br>-against-<br><br>RENA BITTER, Assistant Secretary for Consular Affairs United States Department of State, et al.,<br><br>                      Defendants. | 23-CV-9487 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

      Plaintiff Irum Waris, a citizen of the United States, filed a visa application for her husband Umer Farooq for entry into the United States. Farooq's visa application remains under administrative processing, and so Waris seeks an order directing Rena Bitter, Julie M. Stufft, and Andrew Schofer (collectively, "Defendants") to adjudicate Farooq's visa application and issue permission for Farooq to enter the United States. The Court finds that the doctrine of consular nonreviewability does not bar this action and the action is not moot, because an applicant with a visa application in administrative processing has not yet received a final decision. However, Waris has failed to allege unreasonable agency delay in deciding the visa application. Accordingly, Defendants' motion to dismiss under Rule 12(b)(1) is DENIED, the motion to dismiss under Rule 12(b)(6) is GRANTED, and the case is dismissed without prejudice.

## BACKGROUND

      The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Waris is a United States citizen who resides in Middletown, New York. ECF No. 1 ("Compl.") at 3 ¶ 6; Ex. A;[1] Ex. B. Sometime in 2018, Waris became a lawful permanent resident of the United States and filed an application for Farooq with United States Citizenship and Immigration Services ("USCIS"). Compl. at 3 ¶¶ 2–3. Waris and Farooq married in Pakistan on March 19, 2019. Compl. at 4 ¶ 4; Ex. D; Ex. E.

On July 1, 2019, USCIS received Waris's Form I-130 Petition for Alien Relative submitted on behalf of Farooq. Compl. at 4 ¶ 5; Ex. F. The Form I-130 Petition was approved in 2020. Compl. at 4 ¶ 6. Subsequently, in May 2020, Waris's case was sent to the National Visa Center ("NVC") for consular processing. *Id.* at 4 ¶ 7; Ex. G. After Waris submitted all necessary documents and evidence to the NVC, on April 9, 2021, Waris's case on behalf of Farooq was deemed documentarily qualified. Compl. at 4 ¶ 8; Ex. H; *see also* 22 C.F.R. § 40.1(h) (defining documentarily qualified). Separately, Waris was admitted as a citizen of the United States on November 16, 2022, and she informed the Islamabad Embassy of her naturalization. Compl. at 4 ¶ 9; Ex. A.

Farooq's interview for his immigrant visa was on March 6, 2023. Compl. at 4 ¶ 10; Ex. I. During his interview, Farooq was informed that there was an error on the city of birth listed for his birth certificate. Compl. at 4 ¶ 11. He submitted a corrected birth certificate along with his original passport to the Islamabad embassy on March 9, 2023. *Id.* at 5 ¶ 12; Ex. I. Waris sent multiple emails to the Islamabad Embassy and reached out to her congressional representatives requesting a status update on Farooq's immigrant visa. Compl. at 5 ¶ 14; Ex. I; Ex. J.

As of January 30, 2024, the U.S. Department of State's Visa Status tool for Farooq's application stated:

---

[1] All exhibits, unless otherwise noted, refer to those found at ECF No. 9.

> A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete. Please be advised that the processing time varies and that you will be contacted if additional information is needed.

ECF No. 15 ("Opp.") at 8–9; ECF No. 15-2; *see also* U.S. Dep't of State, CEAC, "Visa Status Check," https://ceac.state.gov/CEACStatTracker/Status.aspx?App=IV (using Immigrant Visa Case Number ISL2020642053) (last visited June 27, 2024). In a privacy release to her congressional representative, Waris stated that in the last message she received from the Islamabad embassy she was informed that the visa was still under administrative processing. Ex. J.

    Because Farooq has not been issued a visa, Waris has consistently traveled to visit Farooq in Pakistan, and Waris and Farooq have been unable to build a life together in the United States. Compl. at 5 ¶¶ 17–18; Ex. K. Waris alleges that she has endured such emotional harm that she suffered a miscarriage caused by the stress and depression of not having her husband with her. Compl. at 6 ¶ 22; Ex. L. Waris has also been experiencing levels of anxiety and insomnia and has been taking medication for her depression. ECF No. 19.

    On October 28, 2023, Waris filed the Complaint requesting an order, under the Mandamus Act and Administrative Procedure Act ("APA"), directing Defendants to adjudicate Waris's immigrant visa application and issue permission to Farooq for entry into the United States of America. Compl. at 9. Defendants move to dismiss the Complaint in its entirety, arguing that (1) the action is moot because a consular officer already refused Farooq's visa application in March 2023, (2) the doctrine of consular nonreviewability precludes judicial review of the consular officer's decision, (3) the Court lacks jurisdiction over the mandamus claim, and (4) Waris fails to state a cause of action for her APA claim. ECF No. 12 ("Mem.").

**LEGAL STANDARD**

The Court sets forth the legal standards governing motions to dismiss for lack of standing and failure to state a claim.

**I.      Motion to Dismiss for Lack of Standing**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. (internal citation omitted). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (internal citation omitted). A court may also consider evidence outside the pleadings, such as affidavits and exhibits. *See Makarova*, 201 F.3d at 113.

**II.     Motion to Dismiss for Failure to State a Claim**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

## DISCUSSION

The Court first finds that as Farooq's application is in administrative processing, no final adjudication has been made, and the claims are not barred by consular nonreviewability nor are they moot. The Court next dismisses Waris's mandamus claim, because a remedy is available under the APA. Finally, the Court dismisses Waris's claim of unreasonable delay under the APA.

### I. Plaintiff's Claims Are Not Barred By Consular Nonreviewability

The Government argues that this action is barred in its entirety by the doctrine of consular nonreviewability. The Supreme Court and the Second Circuit have held that the doctrine of consular nonreviewability generally bars courts from reviewing a consular officer's denial, suspension, or grant of a visa. *See Dep't of State v. Munoz*, 602 U.S. ___ (2024); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978); *see also Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 125 (2d Cir. 2009) (noting the exception that judicial review is authorized for the denial of a visa when the plaintiff challenges the denial on First Amendment grounds). Many courts in this circuit have extended the doctrine of consular nonreviewability "to bar *any* part of the visa application process, including cases seeking to compel action on an application within a reasonable period of time." *Ahmed v. Bitter*, No. 23-CV-189 (NGG), 2024 WL 22763, at *5 (E.D.N.Y. Jan. 2, 2024); *see also Abdo v. Tillerson*, No. 17-CV-7519 (PGG), 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019) (collecting cases).

5

For its argument that the doctrine of consular nonreviewability applies to plaintiffs seeking to compel an official to adjudicate a visa application, the Government relies in part on cases citing the Second Circuit case of *Hsieh*, which states that "[i]t is settled that the judiciary will not interfere with the visa-issuing process." 569 F.2d at 1181. In *Hsieh*, the Second Circuit affirmed dismissal of an action seeking review of the consular officers' decisions to hold up issuance of visas to the appellant's children based on the consular officers' suspicion that the "appellant's status may have been procured by fraud." *Id*. at 1181–82. However, *Hsieh* does not apply to inaction by consular officials. There, the doctrine of consular nonreviewability "applied to the *action* of the American Consul in Taiwan suspending or denying the issuance of visas" and therefore is "unlike the case at bar where Plaintiff is not challenging a consular official's actions but is instead challenging the unreasonable delay in taking any action." *Ahmed*, 2024 WL 22763, at *5 (internal citation and quotation marks omitted).

The Court finds this distinction compelling. Indeed, a number of district courts in this Circuit have distinguished actions alleging unreasonable delay in the visa application process from those challenging decisions to grant or deny a visa. *See e.g., id*. at *6 (cleaned up) ("Judicial review of challenges to a consular officer's failure to make any decision at all does not interfere with the plenary power of Congress to prescribe the terms and conditions upon which [non-citizens] may come to this country or call into question the enormous discretion that Congress has granted the Executive in this area."); *Sharifi v. Blinken*, No. 23-CV-5112 (OEM), 2024 WL 1798185, at *3 (E.D.N.Y. Apr. 25, 2024) (holding that when a visa application was "nominally 'refused'" for visa processing, "[f]or the Court to exercise its authority over undue delay cases under such circumstances does not interfere with Congress' plenary powers nor disturb the doctrine of consular nonreviewability"); *Am. Acad. of Religion v. Chertoff*, 463 F.

Supp. 2d 400, 421 (S.D.N.Y. 2006) (finding that "allowing a visa application to stagnate undecided for an indefinite period of time, as the Government appears to be doing in this case, is not a permissible option"). "By consigning applicants to 'administrative processing,' the Government endeavors to enjoy the benefits of consular nonreviewability without actually issuing final decisions." *Ibrahim v. U.S. Dep't of State*, No. 19-CV-610 (BAH), 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020) (quoting *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 289 (D.D.C. 2016)).

Courts in other districts, most notably in the D.C. and Ninth Circuits, have more routinely rejected the argument that the doctrine of consular nonreviewability applies to cases regarding the lack of action by consular officials. *See, e.g.*, *Augustin v. Blinken*, No. 23-CV-76 (JEB), 2023 WL 4547993, at *3 (D.D.C. July 14, 2023) (internal quotation marks omitted) (collecting cases standing for the proposition that "the doctrine of consular non-reviewability precludes review only of final visa determinations and does not apply to challenges regarding decisions that are not yet final"); *Nine Iraqi Allies*, 168 F. Supp. 3d at 290 (internal citation omitted) ("[T]he doctrine of consular nonreviewability is not triggered until a consular officer has made a decision with respect to a particular visa application."); *Najafi v. Pompeo*, No. 19-CV-5782 (KAW), 2019 WL 6612222, at *5 (N.D. Cal. Dec. 5, 2019) (stating that consular nonreviewability did not apply because the plaintiffs were challenging the lack of a consular officer's decision); *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997) (cleaned up) ("Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review. However, when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists.").

Finding that the doctrine of consular nonreviewability does not apply to actions seeking to compel visa adjudications, the Court turns to whether Farooq's visa application has been denied or whether there has not yet been a final decision regarding the visa application. Farooq's visa application is currently in administrative processing. *See* Ex J. The Government argues that the State Department has already acted in this case by refusing Farooq's visa application pursuant to 8 U.S.C. § 1201(g). Mem. at 7. According to the Government, a consular officer "cannot temporarily refuse, suspend or hold the visa for future action," such that a visa refused and in administrative processing is the same as a refusal. *See id*. at 7–8 (citing *Alharbi v. Miller*, 368 F. Supp. 3d 527, 557 (E.D.N.Y. 2019), *aff'd in part, dismissed in part*, 829 F. App'x 570 (2d Cir. 2020)).

However, there is no controlling law on whether a visa denied for administrative process constitutes a final adjudication, and few courts in the Second Circuit have weighed in on such. Certain courts in this circuit have held that "a visa that is in 'administrative processing' cannot be said to have received final approval." *Saleh v. Tillerson*, 293 F. Supp. 3d 419, 431–32 (S.D.N.Y. 2018); *see also Sharifi*, 2024 WL 1798185, at *3 (denying the Government's motion to dismiss on mootness grounds because a refusal pursuant to Section 221(g), a section of the Immigration and Nationality Act under which visas may be refused, does not constitute a final agency action); *Ahmed*, 2024 WL 22763, at *6 (internal citation omitted) ("Cases in administrative processing have not been finally refused, and are therefore subject to judicial review for undue delay."). And while the Government contends that Waris fails to identify any binding Second Circuit caselaw supporting the argument that the consular officer's refusal under Section 221(g) was not final, ECF No. 18 ("Rep.") at 4, neither has the Government provided any binding Second Circuit caselaw demonstrating that the refusal under Section 221(g) *was* final. In fact, the Government

8

has not pointed to any Second Circuit caselaw affirmatively stating that a visa in administrative processing has been finally adjudicated.

Many courts in other circuits are in agreement with those in the Second Circuit, holding that any applicant with a visa application in administrative processing has not yet received a final decision. *See, e.g.*, *Ibrahim*, 2020 WL 1703892, at *5 (internal citations and quotation marks omitted) (collecting cases noting that "courts have consistently recognized that where the application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final"); *Kiani v. Blinken*, No. 23-CV-5069 (GW), 2024 WL 658961, at *5 (C.D. Cal. Jan. 4, 2024) (finding that when a visa application was refused for administrative processing, the plaintiffs did not "receive a final adjudication of the visa application" and that "a nondiscretionary duty to adjudicate this visa application remain[ed]"); *Obad v. Dep't of State*, No. 23-CV-409 (KHJ), 2024 WL 412758, at *3–4 (S.D. Miss. Jan. 17, 2024) (finding that absent the possibility of judicial review, a visa application could be held without explanation in administrative processing indefinitely and that the consular officer has a duty to issue or refuse a visa application within a reasonable time); *Alwan v. Risch*, No. 18-CV-0073 (ALM), 2019 WL 1427909, at *4 (S.D. Ohio Mar. 29, 2019) (concluding that no final decision had been made when "applications [were] still entrenched in 'administrative processing'").

This Court finds compelling the reasoning of the many courts, including the courts in the Second Circuit, that visas refused for administrated processing have not been finally adjudicated. The language of the refusal for Farooq's visa application states: "[i]f you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing." Opp. at 9. It is therefore reasonable to infer that another decision is forthcoming, and Waris has yet to receive a final adjudication of the visa

application. Moreover, interpreting administrative processing as a denial "elevates form over substance. As other courts have found, the focus should be on what is actually happening; even if the State Department chooses to characterize a section 221(g) notification as a 'refusal,' an interim decision is not sufficiently final to warrant the application of the doctrine [of consular nonreviewability]." *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020). Accordingly, the doctrine of consular nonreviewability does not apply here, where there has not been a final adjudication on Farooq's visa application and Waris seeks to compel an adjudication. The Court denies the Government's motion to dismiss on the grounds of consular nonreviewability.

## II.     Plaintiff's Action Is Not Moot

The Government additionally argues that Waris's complaint should be dismissed as moot because Farooq's visa application was already adjudicated through a Section 221(g) refusal. An action to compel the adjudication of a visa application may be moot when the executive agency "grants the relief sought in the complaint prior to the court's adjudication." *Silva v. U.S. Citizenship & Immigr. Servs.*, No. 13-CV-8920 (VB), 2015 WL 2330304, at *3 (S.D.N.Y. Mar. 26, 2015) (internal citation and quotation marks omitted). However, as discussed *supra* Section I, there has not been a final decision on Farooq's visa application. Accordingly, this case has not been mooted by the "refusal" pursuant to Section 221(g), and the Government's motion to dismiss on the grounds of mootness is denied.

## III.    Plaintiff's Mandamus Act Claim is Dismissed

The Government next argues that Waris's mandamus claim fails for lack of jurisdiction. "Mandamus may be awarded only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d

119, 132–33 (2d Cir. 2008). Here, although Waris argues that she has exhausted all administrative remedies by providing the Islamabad Embassy with all necessary documents and making calls to the Islamabad Embassy and congressional offices, the availability of an APA claim leaves Waris unable to establish the third prong of this test. *See Lyons v. United States Citizenship & Immigr. Servs.*, No. 21-CV-3661 (JGK), 2023 WL 144879, at *9 (S.D.N.Y. Jan. 10, 2023) (collecting cases stating that a plaintiff cannot pursue a mandamus claim when an adequate remedy is available under the APA). This is true even though Waris fails to adequately plead an APA claim for the reasons stated in Section IV. *See Cohen v. Jaddou*, No. 21-CV-5025 (PAC), 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023); *Sharifi*, 2024 WL 1798185, at *4. Accordingly, the Court grants the Government's motion to dismiss the mandamus claim without prejudice.

### IV.     Plaintiff's APA Claim Is Dismissed

Finally, the Government argues that the Complaint fails to state a claim under the APA. The APA requires that, "within a reasonable time," an "agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Where agency action is "unlawfully withheld or unreasonably delayed," a reviewing court shall "compel" such action. *Id.* § 706(1); *see also Ahmed v. Cissna*, 327 F. Supp. 3d 650, 670 (S.D.N.Y. 2018), *aff'd sub nom. Ahmed v. Cuccinelli*, 792 F. App'x 908 (2d Cir. 2020) (stating that a party may bring a claim under the APA where an agency failed to take a discrete action that was required of it). Courts evaluate APA claims that agencies have unreasonably delayed adjudicating pending administrative matters under a six-factor standard set out in *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). *See Nat. Res. Def. Council v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013). Under this standard:

> (1) the time agencies take to make decisions must be governed by a rule of reason;

> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal citations and quotation marks omitted). Weighing the factors individually and considering them in combination, and although Waris does not respond to Defendants' arguments on any of the individual factors, the Court finds that the Complaint does not state a claim under the APA.

### A. *TRAC* Factors One and Two

The first two *TRAC* factors, both relating to the reasonableness of delay, weigh in favor of the Government. As Congress has not imposed a statutory deadline on considering visa applications, the Court turns to caselaw as a guide for the rule of reason applicable here. *Ahmed*, 2024 WL 22763, at *7 (also applying the *TRAC* factors to a claim regarding the adjudication of plaintiff's Form I-130 petition). Congress has not supplied a timetable for the adjudication of visa applications, and instead gives agencies "wide discretion in the area of immigration processing." *Saharia v. United States Citizenship & Immigr. Servs.*, No. 21-CV-3688 (NSR), 2022 WL 3141958, at *5 (S.D.N.Y. Aug. 5, 2022) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)).

Courts have relied on varying start dates for the unreasonable delay analysis as it pertains to Form I-130 applications. *See, e.g.*, *Ahmed*, 2024 WL 22763, at *8 (considering both the date

12

when a visa number became available and the date the plaintiff became documentarily qualified when analyzing the delay in adjudicating the plaintiff's Form I-130); *Augustin*, 2023 WL 4547993, at *2, 4 (finding a delay of 30 months for one plaintiff and 15 months for another, measured from the date the applications were marked documentarily complete to the date of the court's decision); *Sharifi*, 2024 WL 1798185, at *4 (stating that there was a delay of barely over one year based on the time from the applicant's interview to the court's opinion); *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 225 (E.D.N.Y. 2021) (looking at when pending applications were filed in applying the *TRAC* factors to Form I-130 applications). In other immigration-related APA cases, many courts rely on the date the application was filed until the date of the court's opinion. *See Kaur v. Mayorkas*, No. 22-CV-4514 (PAE), 2023 WL 4899083, at *7 (S.D.N.Y. Aug. 1, 2023); *Ying Yu Liu v. Wolf*, No. 19-CV-410 (PGG), 2020 WL 2836426, at *7 (S.D.N.Y. May 30, 2020); *Boussana v. Johnson*, No. 14-CV-3757 (LGS), 2015 WL 3651329, at *1 (S.D.N.Y. June 11, 2015); *cf. Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) (analyzing the delay based on the time from the filing of the plaintiff's application to the filing of the complaint).

Here, under either timeframe, Waris has not alleged unreasonable agency delay. On July 1, 2019, USCIS received Waris's Form I-130 Petition for Alien Relative submitted on behalf of Farooq. Compl. at 4 ¶ 5; Ex. F. The Form I-130 Petition was approved in 2020. Compl. at 4 ¶ 6. Subsequently, in May 2020, Waris's case was sent to the NVC for consular processing. *Id*. at 4 ¶ 7; Ex. G. Farooq's interview for his immigrant visa was on March 6, 2023. Compl. at 4 ¶ 10; Ex. I. As requested during the interview, Farooq submitted a corrected birth certificate along with his original passport to the Islamabad embassy on March 9, 2023, just over one year ago. Compl. at

13

5 ¶ 12; Ex. I. Based on the timing of the petition's initial approval and the date the corrected birth certificate was provided, this petition has been pending for between one to four years.

"[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Cohen*, 2023 WL 2526105, at *5 (internal citations omitted); *see also Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding that a "delay of almost five years" was not unreasonable); *Aydemir v. Garland*, No. 22-CV-100 (PAC), 2022 WL 4085846, at *4 (S.D.N.Y. Sept. 6, 2022) (noting that "courts generally conclude that a green card delay of less than four years is reasonable on its face; by contrast, delays exceeding six years are often found unreasonable"). Moreover, Waris has not alleged any irregularities as to the Government's process. "The burden is on the Plaintiff to plausibly allege unreasonable delay, and other than the passage of time, Plaintiff has given the court no basis on which to conclude that the process of adjudicating her petition has been unreasonably prolonged or delayed." *Ahmed*, 2024 WL 22763, at *8 (cleaned up). Therefore, the first two *TRAC* factors weigh in the Government's favor.

### B. *TRAC* Factors Three and Five

The third and fifth *TRAC* factors, which are "often considered together, require the Court to examine the nature and extent of the interests prejudiced by delayed agency adjudication." *Saharia*, 2022 WL 3141958, at *6 (collecting cases). Waris alleges that she has had to travel frequently to visit Farooq in Pakistan and that the two of them have not been able to build a life together in the United States. She further alleges that she has endured such emotional harm that she suffered a miscarriage caused by the stress and depression of not having her husband with her. Waris also states that she has been experiencing levels of anxiety and insomnia and has been taking medication for her depression.

The alleged adverse effects of the delay on Waris's mental and physical state are significant. *See id*. at *7 (finding that the plaintiff's "specific allegations surrounding the harm to his health and welfare are sufficient to state a claim"). And the Government has contemplated that the third and fifth *TRAC* factors weigh in Waris's favor. Mem. at 15. At this juncture, the third and fifth *TRAC* factors weigh in favor of Waris and against dismissal. *See Lyons*, 2023 WL 144879, at *8–9 (holding that the third and fifth *TRAC* factors weigh in favor of plaintiff when "plaintiff plausibly alleged that he endured prejudice to important interests as a result of USCIS's delay, and that the full extent of the prejudice cannot be determined absent an evidentiary record").

### C. *TRAC* Factor Four

The fourth *TRAC* factor requires the Court to consider the effect of expediting delayed action on agency activities of a higher or competing priority. Courts consider this factor, alongside the first, among the "most important." *Cohen*, 2023 WL 2526105, at *7. The Government argues that this factor weighs heavily in favor of the Government because "judicial intervention in this case would result in both prioritizing Farooq's visa application at the expense of other visa applicants and the prospect that applicants with the means to hire counsel will obtain preferential treatment in the adjudication process." Mem. at 15–16.

The Court appreciates that denying the instant motion to dismiss may move Waris ahead of other applicants who have similarly waited a long time for their visa applications to be adjudicated. However, "it is not apparent . . . that a resolution of the unreasonable-delay claim in the plaintiff's favor would in fact permit the plaintiff to jump the line at the expense of others." *Lyons*, 2023 WL 144879, at *7 (quoting *Keller Wurtz v. USCIS*, No. 20-CV-2163 (JCS), 2020 WL 4673949, at *5 (N.D. Cal. Aug. 12, 2020)). The Court cannot accept the Government's

15

representation to that effect as true at this stage. *Id*. The Government would "have an opportunity to prove that the fourth *TRAC* factor cuts in its favor later in this litigation, but the Court currently lacks an evidentiary record showing that granting the requested relief would serve only to delay other applications equally deserving of consideration." *Id*. (internal quotation marks and citation omitted). Accordingly, this factor is neutral.

### D.  *TRAC* Factor Six

The last *TRAC* factor – that agency impropriety contributed to the delay – is inapplicable because Waris makes no allegations regarding the Government's motivations. *See Cohen*, 2023 WL 2526105, at *7.

***

To summarize, the first and second *TRAC* factors favor the Government, the third and fifth *TRAC* factors favor Waris, and the fourth and sixth *TRAC* factors are neutral. Although the delay has undoubtedly harmed Farooq and Waris, "the rule of reason supplied by the caselaw . . . and the absence of bad faith [] suggest that the delay is not yet unreasonable." *Augustin*, 2023 WL 4547993, at *6. The Court nonetheless "recognizes that the delay is substantial and imposes hardship on [Farooq and Waris], and it encourages the Government to act on the application as soon as possible." *Id*. (cleaned up). The Government's motion to dismiss is GRANTED as to the cause of action under the APA.

<b>CONCLUSION</b>

For the reasons stated herein, the Government's motion to dismiss under Rule 12(b)(1) is DENIED, the motion to dismiss under Rule 12(b)(6) is GRANTED, and the case is dismissed

without prejudice should the application remain pending to an unreasonable degree. The Clerk of Court is respectfully directed to terminate ECF No. 11 and to close the case.

Dated: June 28, 2024
      New York, New York

                                       SO ORDERED.

                                       JESSICA G. L. CLARKE
                                     United States District Judge